[No. 8,389.—Department Two.]
November 3, 1882.

## P. N. NEWELL *v.* JOSEPH SEXTON, EXECUTOR · OF THE ESTATE OF R. K. SEXTON, DECEASED.

CONVERSION OF PROMISSORY NOTES BY PLEDGEE—PLEDGE—ASSIGNMENT—
ACCOUNT.—Action for the conversion, by defendant's testator, of three
promissory notes secured by mortgage, which were pledged to the tes-
tator by one Hammell, to secure a note of Hammell to the testator for
seven thousand dollars and interest.   Hammell subsequently transferred
to one Hayman his interest in the three notes, to secure Hayman against
liability as joint maker on two other notes of Hammell to one Sheffield,
and also for contemplated advances, Hayman agreeing to account to Ham-
mell for any balance realized.   Hayman sold and assigned to the plaintiff
the three notes then still in the possession of testator.   The Court below
found that the testator converted the notes.   The sum claimed is the ex-
cess due on the three notes which were pledged, over and above the
amount due the testator by the pledgor Hammell.

*Held:* It was intended the interest of Hammell in the notes pledged should
pass to Hayman, Hammell relying upon the promise of Hayman that he
would properly account, and that this promise may be enforced when the
plaintiff (assignee of Hayman) shall have recovered judgment in the
present action.

APPEAL by defendant from the judgment of the Superior
Court of the County of Santa Barbara.   HATCH, J.

Action for the conversion, by defendant's testator, of three
promissory notes.   The Court below found:

That on the fifteenth day of April, A. D. 1876, James Ham-
mell made, executed, and delivered his certain promissory
note for the sum of seven thousand dollars and interest
thereon at the rate of one per cent. per month from date, un-
til paid, to one R. K. Sexton, defendant's testator.   Said note
was payable two years after its date.

That to secure the payment of said promissory note to
said Sexton, said James Hammell, on said fifteenth day of
April, A. D. 1876, pledged to said R. K. Sexton and delivered
the possession thereof as said pledge to said Sexton the fol-
lowing described promissory notes, to wit: Three promissory
notes, each dated Santa Barbara, March 15, 1876, each being
for the sum of two thousand eight hundred and forty-two
dollars and twelve cents, and bearing interest six months

after date, at the rate of ten per cent. per annum; one of said three notes being due and payable in one and one half years from its date, and one of said three notes being due and payable in two and one half years from its date, and one of said three notes being due and payable in three and one half years from its date. All of said three notes being signed by E. L. Paddock and Frederick Thompson as makers, and payable to said James Hammell, as payee, as alleged in the plaintiff's complaint.

That the contract of pledge entered into by said James Hammell and said R. K. Sexton in reference to said three promissory notes was in writing, and signed by said R. K. Sexton.

That on the tenth day of November, A. D. 1877, said Hammell assigned, sold, and transferred to A. Hayman all of his right, title, and interest in said three promissory notes; said assignment was by an instrument in writing and was subject to the pledge of said notes, as found in the second finding herein, and as alleged in the plaintiff's complaint.

It was alleged in the complaint that Hammell assigned to Hayman to secure him from liability as joint maker with Hammell upon two notes payable to one Sheffield, the principal of which, in the aggregate, amounted to one thousand seven hundred dollars, and also for contemplated advances from Hayman to him, and that the assignment was made upon the following agreement in writing between them. * * *

"Now, therefore, said first three notes herein described are sold and delivered to said Hayman for and in consideration of such sums of money as he may at any time pay upon said last-described two notes which he has signed for the accommodation of the said Hammell, and such further of money, which added to the amount which may be paid by said Hayman upon said last two notes shall equal the amount of the proceeds of said first described three notes herein sold, after deducting from the gross amount of said three notes the amount of said R. K. Sexton's said claim and lien upon them, and the said A. Hayman hereby agrees to pay to the said Hammell all the proceeds of said notes herein sold to him, after deducting therefrom the amount of said Sexton's claim and the amount

which said Hayman shall actually pay at any time upon said two notes upon which he is joint maker with said Hammell, as aforesaid."

The Court further found:

"That on July 23, 1878, said A. Hayman, by a written assignment, assigned, sold and conveyed and transferred all his right, title, and interest in said three promissory notes to the plaintiff in this action, as alleged in plaintiff's complaint, and not otherwise.

"That on or about the twenty-sixth of November, 1878, said R. K. Sexton, while holding said three promissory notes as a pledge, as found in the second finding herein, bartered, sold, converted and appropriated said three notes to his own use, as alleged in plaintiff's complaint.

"That at the time said R. K. Sexton converted and appropriated said three promissory notes to his own use, as found in the sixth finding herein, the value of said three promissory notes was nine thousand five hundred and forty-two dollars and ninety-nine cents.

"That at the time said R. K. Sexton converted and appropriated said three promissory notes to his own use, as found in the sixth finding herein, there was due and unpaid to said R. K. Sexton from said James Hammell on said seven thousand dollar note, the sum of seven thousand two hundred and twenty-seven dollars and thirty-seven cents."

As a defense to the action the defendant set up: That on or about the twenty-ninth day of November, 1878, and while R. K. Sexton, the person named in plaintiff's complaint, was the holder of the three promissory notes made by E. L. Paddock and Frederick Thompson to James Hammell, and in the second paragraph of plaintiff's complaint mentioned, it was agreed by and between the said James Hammell and the said R. K. Sexton, that the said E. L. Paddock and Frederick Thompson should convey to said R. K. Sexton the land in Ventura county, which was mortgaged to secure the payment of said three notes of Paddock and Thompson, and that the said R. K. Sexton should accept the conveyance of the said land in Ventura county as aforesaid, in satisfaction of five thousand dollars of the principal of the note for seven thou-

sand dollars made by said James Hammell to said R. K. Sexton, and mentioned in the first paragraph of the complaint, and of the interest on said note for seven thousand dollars accrued and to accrue up to the thirtieth day of August, 1879; and it was at the same time further agreed between the said R. K. Sexton and the said James Hammell that in consideration of the conveyance of the said land in Ventura county by the said Paddock and Thompson, the said R. K. Sexton should surrender to said Paddock and Thompson their three promissory notes herein above mentioned.

That on or about the said twenty-ninth day of November, 1878, in accordance with the foregoing agreement, the said Paddock and Thompson conveyed said land in Ventura county to said R. K. Sexton, and the said R. K. Sexton surrendered to them their three promissory notes above mentioned.

As to these allegations of the answer the Court found, that the alleged contract set up in defendant's answer as a special defense was a verbal one.

That said R. K. Sexton has given said James Hammell a credit of five thousand dollars, as alleged in defendant's answer, and delivered up to said E. L. Paddock and Frederick Thompson their three said promissory notes, as defendant alleged.

That said E. L. Paddock and Frederick Thompson conveyed the land on or about the twenty-sixth of November, 1878, by deed to said R. K. Sexton for their three said promissory notes, then in the hands of said R. K. Sexton, as a pledge thereof, as found in the second finding herein.

That neither said James Hammell nor any one in his behalf authorized said R. K. Sexton, or any other person, to dispose of, convey, or surrender to said E. L. Paddock and Frederick Thompson the excess of the amount due on their three said promissory notes, over the amount of said R. K. Sexton's lien on said three promissory notes by reason of his pledge thereon to secure the payment of said seven thousand dollar note.

R. K. Sexton died testate, and the defendant was duly appointed executor. A claim for the sum of one thousand seven hundred and ten dollars and thirty-six cents, and interest, was presented, and rejected. Plaintiff had judgment in the Court below. The appeal was taken from the judgment on

the judgment-roll. After the decision by department, a petition for a hearing in bank was filed, and denied.

*R. B. Canfield,* for Appellant.

*B. F. Thomas* and *W. C. Stratton,* for Respondent.

*R. B. Canfield,* for Appellant, on petition for hearing in bank.

A collateral security is not assignable without the obligation for which it is held as security, and an instrument or agreement purporting to effect such an assignment is a nullity. In *Peters* v. *Jamestown Bridge Co.,* 5 Cal. 336, the Court, considering the question whether a conveyance of all the grantor's right, title, and interest in lands could operate as an assignment of a mortgage of those lands held by him, say: "The deed from Perry to plaintiff could not operate as an assignment of the mortgage. The latter is a mere security for the debt, and can not pass without a transfer of the debt."

This doctrine is reaffirmed in *Nagle* v. *Macy,* 9 Cal. 428. Justice Field, delivering the opinion of the Court, says: "The debt and the mortgage are inseparable; the latter must follow the former. As distinct from the debt, the mortgage has no determinate value and is not the subject of transfer." These cases, which state the law for California, rest upon the doctrine that the mortgage does not convey an estate in the land, but is a mere security for the debt, and stands in the same relation to the debt as any other security; they are, therefore, applicable to the case at bar.

In *Polhemus* v. *Trainer,* 30 Cal. 688, the Court say: "Independent of the debt, the mortgage has no assignable quality. It always abides with the debt, and does not pass unless the debt itself be assigned. An assignment of the mortgage without the debt is a nullity." In New York the assignment of a mortgage without the bond for which it is security, is a nullity. (*Cooper* v. *Newland,* 17 Abb. Pr. 342.)

In *Van Eman* v. *Stanchfield et al.,* 13 Minn. 75, the action was by an assignee of a promissory note, to recover the amount of the note and interest. This note had been assigned to plaintiff by one to whom it had been assigned as a

collateral security for a debt, and plaintiff took it under cir-
cumstances which made it subject to the rights or equities of
any other party thereto; but the debt for which it had been
held as security was not assigned to plaintiff. The defendant
had judgment, and an order refusing a new trial was sustained
on appeal, the Court holding that "the lien or special property
which the pawnee has in the pawn, is by reason of his own-
ership of the debt, for which he holds it as security. He can
not, therefore, separate the lien from the debt, so-that the
chose in action may be owned by one man, and the lien held
by another. The lien is not a distinct and independent right
of property, capable of being transferred or assigned. The
plaintiff, not showing himself owner of the debt, therefore
failed to establish his title to the collateral."

And in this case it was held to make no difference that de-
fendants had entered into a special agreement to pay the
note to plaintiff's assignor. That agreement was to be con-
strued as binding defendant to pay to plaintiff's assignor, as
the person authorized to collect the note, by reason of his
special property in it, as the security for the performance of
another obligation. So in the case at bar; defendant's obli-
gation to pay Hayman was only as he was entitled to have
Hammell's interest in the pledged notes as a collateral secur-
ity, and it follows that the attempted transfer of this interest
to plaintiff was a nullity, and that plaintiff never acquired an
interest in the pledged notes on which he could recover.

If Hayman should pay the notes signed for Hammell's ac-
commodation, and should assign his claim against Hammell
for the advances to a stranger, this stranger would have a
right to avail himself of the security which Hayman had
held, and might bring an action against this defendant, to
which the assignment of the collateral to Newell, and the
judgment obtained by him in this action, would be no de-
fense. (*Betz* v. *Heebner*, 1 Pa. St. 280; and cited U. S. Dig.,
1st series, vol. 1; p. 791, par. 544.)

The COURT:

The assignment from Hammell to Hayman transferred the
legal title to the former's interest in the notes pledged to
plaintiff's testator—being Hammell's property in the excess

of the amount collected from the notes pledged beyond the indebtedness due from Hammell to the pledgee, with the right to sue for the whole of such excess. The assignment was made to secure Hayman against a contingent liability upon certain other notes which he had signed for the accommodation of Hammell, and contemplated advances; Hayman agreeing to pay Hammell all "the proceeds of the said notes herein sold to him, after deducting therefrom the amount of said Sexton's claim and the amount which said Hayman shall actually pay at any time upon said ·two notes upon which he is joint maker with said Hammell as aforesaid." It seems plain it was intended the interest of Hammell in the notes pledged should pass to Hayman, the former relying upon the promise of the latter that he would properly account; a promise which can be enforced when plaintiff shall have recovered his judgment in the present action.

Judgment affirmed.